BOWERS *v.* JONES ET AL.

[86 South. 711.   No. 21421.]

SUNDAY. *Attorney retained on secular day may recover for services performed on Sunday.*

Where an attorney is retained on a secular day, he may recover for the value of the retainer, although he may have conferred with his client on Sunday.

APPEAL from chancery court of Harrison county.

Hon. W. M. Den,ny, Jr., Chancellor.

Attachment in chancery by E. J. Bowers against Melondia E. Jones and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

*J. A. Leathers,* for appellant.

There is of course, no contention on the part of the appellant, that an indivisible contract made and entered into on Sunday is not in violation of the law of this state, under section 1366 of the Code of 1906, (section 1102, of Hemingway's Code), and that such contract is void and unenforceable. If this case, under the facts as appear in this record, fell within this section there could be no doubt about its being void and unenforceable. However, during the same month when this case was tried in the lower court, the supreme court decided the case of *Jones* v. *Brantly,* 83 So. 802, which we submit is decisive of the case at bar, and renders it unnecessary to cite other authorities in this brief in support of appellant's contention in this case, and in support of the errors assigned by him on this appeal.

The contract of appellant with appellee, Mrs. Jones, was simply one of retainer for legal services which was made previous to the Sunday when Mrs. Jones arrived in Gulfport, by correspondence between Mrs. Jones and appellant, which is set out in the first part of this brief, just as in the above case of *Jones* v. *Brantley,* the contract under which the retaining fee was recovered was made between Jessie Jones and Mr. T. L. Gilmer on Thursday or Friday of the week preceding the Sunday on which Jessie Jones rendered the services to Mr. Brantley. We call the court's attention here to the fact that under the testimony in this record, appellant's case here is much stronger than that of the Jones case against Brantley, because it appears that in the Brantley case all of the services of the attorney Jones were rendered on Sunday, and in this case only one conference was had on Sunday and other conferences and

advices of the appellee were had with, and given to, appellee, Mrs. Jones by Mrs. Bowers on Monday, Tuesday and Wednesday following, prior to and leading up to the final agreement of settlement entered into between Mrs. Jones and her daughter on January 14, 1919. In view of the fact that this character of contract of employment is a divisible contract as announced by this court in the above case of *Jones* v. *Brantley,* certainly appellant had a right to recover for his services rendered on a *quantum meruit.*

The testimony in the record as to the value of appellant's services in the case at bar is that they were of the value of twenty thousand dollars. This is testified to by General Marshall Miller, appellant, Mr. T. M. Evans and Mr. U. B. Parker, and this testimony is uncontradicted and is nowhere disputed by appellee, or any witness for appellee. In other words, as was said in the Brantley case above mentioned, there was no contract for the gross amount of appellant's services, but appellant was depending upon the value of his retainer's particular services rendered and performed under the retainer thereafter. The case of *Duggan* v. *Champlain,* 75 Miss. 441, 23 So. 179; *W. U. Tel. Co.* v. *McLaurin,* 70 Miss. 26, 13 So. 36; *Campbell* v. *Davis,* 94 Miss. 164, 47 So. 546, all support the foregoing contention on the part of appellant.

We regard it as useless to elaborate further in this brief. Certainly, if the above named case of *Jones* v. *Brantley,* decided by this court just one year ago, decides any principle of law under a given statement of facts, it decides that a retaining contract of agreement entered into by an attorney and client on a day previous to Sunday, although some of the services rendered under said contract are rendered on Sunday, is not a Sunday contract within the meaning of section 1366 of the Code, and therefore unenforcible, but that such a contract is first a divisible contract for services, which is legal, valid and enforcible under the law of the state.

*Mize & Mize* and *Evans & Evans,* for appellee.

The court will see that Mr. Bowers regarded his contract of employment as beginning Sunday. Therefore, if there was any contract of employment which Mrs. Jones absolutely denies, it began on Sunday, and is therefore null and void, under the case of *Jones* v. *Brantley,* 83 So. 802, as Mr. Bowers is suing on an alleged contract which he says he regarded as beginning on Sunday.

Furthermore, the minds of the parties never met as Mrs. Jones continued to want to know what his fee would be if she had to go into court in the case, and Mr. Bowers told her that he could not tell her at that stage of the matter. The fee he eventually asked her is somewhat large for advice given even on Sunday, Monday and Tuesday. The adjustment and agreement reached between Mrs. Jones and her daughter took place on Tuesday, the agreement being dated that day, and being prepared by Mr. Spratt, the attorney from Buffalo, with which Mr. Bowers had nothing to do and did not even know the nature of (testimony of Mrs. Jones; testimony of Mr. Spratt).

Out of dozens of lawyers in Gulfport, only three testified that twenty thousand dollars was a reasonable amount to charge for the advice; Gen. T. M. Miller, of New Orleans, U. B. Parker, of Wiggins, Mississippi, and Hon. T. M. Evans of Gulfport. The court found as a fact that the contract was made on Sunday and was therefore null and void.

The court will see from the record that the conversation had between Mrs. Jones and Mr. Bowers after her arrival in Gulfport were about the same nature as the correspondence in the record and hereinbefore referred to: viz, that if she needed a lawyer in Gulfport, she would like · to have his services, and would like to know what his fee would be, but all the time not knowing whether she would need him, the matter depending upon whether or not, after conference with her daughter, she would decide to go into court. See testimony of Mr. Spratt that Mrs. Jones told Mr. Bowers that before she went into court she would have to know what Mr. Bowers' fee would be. That

she also told him that whether she would go on with the suit would depend on a talk which she intended to have with her daughter. Mr. Spratt further testified that everything was settled without going into court and without consulting Mr. Bowers.

We therefore submit that there was no contract of employment between Mrs. Jones and Mr. Bowers and (2) if there was any contract of employment, it was made on Sunday, and is therefore null and void.

Consequently we submit that this case should be affirmed.

Sam C. Cook, J., delivered the opinion of the court.

This case is an attachment in chancery instituted by appellant, Bowers, a lawyer, hereinafter called complainant, against appellee Mrs. Jones, a nonresident, hereinafter called defendant. The cause of action was a *quantum meruit* demand for the recovery of a fee for professional services rendered defendant by complainant.

The defense was two-fold: First, it was claimed by defendant that she never became the client of the complainant, and, second, that if she did become his client the contract of employment was made on Sunday and therefore nonenforceable.

The chancery court in the case at bar adjudged and found that there was a contract between the parties by which defendant employed complainant to render her the professional services mentioned in the bill of complaint, compensation for which is sought by the suit; its final decree recites that the court "is of the opinion that the contract was made," adjudging, however, that it was made on Sunday, and the trial court dismissed the bill of complaint because the contract of employment was found by the chancellor to have been made on the Lord's Day.

The facts are: The late Joseph T. Jones, of Gulfport, died testate leaving a large real and personal estate of greater value than ten million dollars. More than half

of this estate, called his Southern properties, was located in Mississippi, and the balance, called his Northern property, was situated in New York and states above the Ohio and Potomac rivers.  The whole of his estate was bequeathed and devised jointly to his widow, defendant and appellee in this cause, and to Mrs. Grace Jones Stewart, his daughter.  Mrs. Stewart instituted a partition suit in the chancery court of Harrison county, this state, against the decedent's widow, the defendant and appellee herein, seeking to have partitioned between them the property of the decedent situated in this state, of the value of not less than five million dollars.  A receiver was applied for and appointed in said suit to manage a part of the property pending the suit.  Shortly after the institution of the above-mentioned suit, Mrs. Jones, defendant and appellee in this case, who resided in Buffalo, N. Y., wrote complainant and appellant Bowers, a letter of date December 30, 1918, containing the following inquiry, the only part of it at all pertinent to this suit:

"As I am having considerable difficulty with Mr. Stewart (husband of the complainant in the partition suit), who is insisting that my daughter (the complainant in said suit) have a division of the property, I would like to know if you would be willing to act as my lawyer if I need you. . . . Will you please telegraph me your decision at my expense."

To this letter Mr. Bowers at once replied by telegraph as requested, informing Mrs. Jones that he would be glad to represent her in and about the subject-matter mentioned in her letter to which his telegram was a reply.  Upon or shortly after the reception of the telegram, Mrs. Jones, defendant and appellee, wrote Mr. Bowers a second letter, of date January 4, 1919, wherein she thanked him for being willing to render her professional services as mentioned in her first letter to him, thereby showing that she received his dispatch.  The letter concluded with a statement that she would leave Buffalo for Gulfport on Monday or Tuesday following its date and that she would be

glad to see him (Bowers) on her arrival at Gulfport and talk over the matter fully with him before making any definite decision. None of the aforesaid communications were written or made on a Sunday.

Thus matters stood, save that appellant, Bowers, had examined and familiarized himself with the record in the partition receivership case, until one Sunday morning, shortly afterwards, Mr. Bowers happened to be in the lobby of the Great Southern Hotel in Gulfport, standing near the elevator, when Mrs. Jones, accompanied by a lawyer from Buffalo, N. Y., stepped out of the elevator, and thus Mrs. Jones and Mr. Bowers casually and unexpectedly met. Their greetings were cordial and Mrs. Jones at once requested Mr. Bowers and the New York lawyer to go with her to her room for a conference, manifestly meaning one touching the partition and receivership suit. The New York lawyer represented the estate of Jones, the testator, and could not nor did he represent either Mrs. Jones or Mrs. Stewart, the devisees, in any controversy between themselves over a division of the devised property. Mr. Bowers, as any other lawyer would have done under the circumstances, accepted Mrs. Jones' invitation and he and the New York lawyer accompanied her to her room.

Mr. Bowers had, by the writings passed between Mrs. Jones and himself, already been employed, on a secular day or days, to represent her professionally in and about the subject-matters involved in Mrs. Stewart's suit against her for partition of property, and the incidental receivership, if Mrs. Jones found that she needed the services of a lawyer. An implied contract employing him was already made, and nothing was left undone to perfect the contract, since Mrs. Jones had concluded the contract, at least to the extent of engaging Bowers' services for a conference and advice by the concluding terms of her second letter. Bower's telegram in reply to Mrs. Jones' first letter precluded him from accepting employment from Mrs. Stewart in or about the subject-matter of the partition receivership suit, and he was under duty, after receiving Mrs. Jones'

second letter, to confer with and advise her in respect to said subject-matter upon her arrival at Gulfport, and before the Sunday morning upon which they casually met as before stated.

It seems quite clear that the letter of Mrs. Jones to Mr. Bowers and Mr. Bowers' telegram acknowledging receipt of the letter and agreeing to accept employment from Mrs. Jones, was a complete contract of retainer, and the fact that Mr. Bowers and his client went into conference on the Lord's Day in no way vitiated the retainer. This sort of contract is not unusual. A lawyer is retained, and not infrequently he does not and is not expected to do anything. Lawyers are retained, and the contract is complete, when the lawyer may not represent the other side should there be another side.

A recent decision of this court recognizes this sort of a contract, and the facts of that case are similar to the facts of the instant case. In that case and in this case the Sunday law was invoked by the defendant. In that case, as in this case, the contract of retainer was completed on a secular day, and it was held that although some of the work done by the attorney was performed on Sunday, this did not invalidate that part of the contract of retainer.

It is a well-known fact that some of the corporations retain an attorney merely to prevent him from representing the other side, and he is not to do anything for the corporation retaining him.

*Reversed and remanded.*